**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| MEGAN CORBETT,<br><br>Plaintiff,<br><br>v.<br><br>LAW OFFICE OF JOHNNY PHILLIPS, P.C., and JOHN GARY PHILLIPS JR.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.:<br><br>__________________<br><br>JURY TRIAL DEMANDED |

# COMPLAINT FOR DAMAGES

Plaintiff Megan Corbett ("Plaintiff" or "Ms. Corbett") files this Complaint for Damages against Defendant Law Office of Johnny Phillips, P.C. (the "Firm") and Defendant John Gary Phillips Jr. ("Phillips") (collectively "Defendants").

## Sexual Assault in a Law Office Where "There's No HR Here"

1. On January 5, 2026, Ms. Corbett began working as a Case Manager at the Firm, a personal injury law practice in Brunswick, Georgia owned and run by Defendant Phillips.

2. Her employment lasted just over one week.

3. On her first day, Phillips, the Firm's owner and Chief Executive Officer, repeatedly tried to hold her hand and spun her around at a restaurant. Three days later, while visibly intoxicated on a firm-wide video call, Phillips told the entire

staff, "there's no HR here."

4. On January 13, 2026, Phillips returned to the office drunk from lunch. Over the course of that afternoon, he touched Ms. Corbett's breast twice, rested his head on her breast, pressed his penis against her leg and her arm, spat in her hair, tried to crawl under her desk, and simulated sex acts toward her and toward a female coworker in front of the office.

5. A male coworker had to physically place himself between Phillips and Ms. Corbett, more than once, to stop the assaults.

6. Phillips was not a rogue employee acting outside the knowledge of his employer. Phillips was the Firm. As its owner and highest authority, no one at the Firm stood above him, and he had already told every employee that there was nowhere to take a complaint.

7. Ms. Corbett could not return to that workplace. She resigned the next morning.

8. Plaintiff brings federal claims against the Firm for sexual harassment and a hostile work environment, and for sex discrimination resulting in her constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

9. Plaintiff brings state law claims against Phillips for assault, battery, and intentional infliction of emotional distress.

10. Plaintiff brings state law claims against the Firm for negligent supervision and retention, ratification, and intentional infliction of emotional distress.

11. Plaintiff seeks punitive damages and expenses of litigation, including attorneys' fees, against both Defendants.

## JURISDICTION AND VENUE

12. Plaintiff's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as her federal claims and form part of the same case or controversy.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices and the events giving rise to Plaintiff's claims occurred in Brunswick, Glynn County, Georgia, which lies within this judicial district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. On May 20, 2026, Plaintiff filed a Charge of Discrimination against the Firm with the Equal Employment Opportunity Commission ("EEOC"), Charge No.

415-2026-01748.

16. In her Charge, Plaintiff alleged that the Firm discriminated against her because of her sex, including by subjecting her to sexual harassment and a sexually hostile work environment that forced her to resign.

17. The harassment culminated on January 13, 2026, and Plaintiff was constructively discharged on January 14, 2026. Plaintiff filed her Charge within 180 days of those acts, and the Charge was therefore timely under 42 U.S.C. § 2000e-5(e)(1).

18. The EEOC served notice of the Charge on the Firm, and the Firm, through Phillips, submitted a written position statement responding to Plaintiff's allegations.

19. On September 10, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, informing her of her right to file a lawsuit against the Firm within ninety (90) days of her receipt of that notice.

20. Plaintiff received the Notice of Right to Sue on September 10, 2026.

21. Plaintiff files this lawsuit within ninety (90) days of her receipt of the Notice of Right to Sue, as required by 42 U.S.C. § 2000e-5(f)(1).

22. The Title VII claims asserted in this Complaint are within the scope of Plaintiff's Charge and of the EEOC investigation that could reasonably be expected to grow out of it.

23. Plaintiff has exhausted her administrative remedies, and all conditions precedent to the filing of her Title VII claims have been satisfied.

24. Plaintiff's state law claims are not subject to any administrative exhaustion requirement.

## PARTIES

25. Plaintiff is a female resident of Glynn County, Georgia, and is entitled to bring actions of this type and nature.

26. At all relevant times, Plaintiff was an "employee" of the Firm within the meaning of Title VII, 42 U.S.C. § 2000e(f).

27. Defendant Law Office of Johnny Phillips, P.C. is a Georgia professional corporation that operates a personal injury law practice with offices located at 1316 Newcastle Street, Suite 201, Brunswick, Georgia 31520 and 12 Jackson Street, Newnan, Georgia 30263.

28. The Firm can be served with process via its registered agent listed with the Georgia Secretary of State, Business Filings Incorporated, located at 289 South Culver Street, Lawrenceville, Georgia 30046.

29. At all relevant times, the Firm was Plaintiff's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

30. Defendant Phillips is an individual who, upon information and belief, resides in Glynn County, Georgia, and may be served with process at his residence, 180 Royal Drive, Brunswick, Georgia 31523, or wherever he may be found.

31. Phillips is a lawyer licensed to practice in Georgia. At all relevant times, Phillips was, upon information and belief, the sole owner of the Firm, and he was its Chief Executive Officer.

32. At all relevant times, Phillips had and exercised authority over all Firm employees, including the authority to hire, fire, discipline, assign work to, and set the pay of Plaintiff. Phillips was Plaintiff's supervisor.

33. No officer, manager, or employee of the Firm had authority to supervise, discipline, or remove Phillips.

34. Phillips occupied a position of such high rank within the Firm that he served as its proxy and alter ego. Phillips's conduct, knowledge, and intentions are the conduct, knowledge, and intentions of the Firm.

## FACTUAL ALLEGATIONS

### A. Ms. Corbett Joins the Firm.

35. The Firm hired Ms. Corbett as a Case Manager. She began work at the Firm's Brunswick office on January 5, 2026.

36. The Firm paid Ms. Corbett $18.00 per hour.

37. Ms. Corbett's duties included opening new client matters: preparing the

intake documents for clients to sign, sending letters of representation and letters of protection, sending evidence preservation letters, contacting insurance adjusters, verifying insurance coverage, and following up with clients.

38. Phillips owns, operates, and controls the Firm, and he works out of both its Brunswick and Newnan offices.

39. The Firm had no human resources department. The Firm never gave Ms. Corbett a policies and procedures manual, an anti-harassment policy, or any procedure for reporting harassment, and she never signed any acknowledgment of such a policy.

**B. January 5, 2026: Phillips Targets Ms. Corbett on Her First Day.**

40. On Ms. Corbett's first day of work, the Firm's Brunswick employees went to a group lunch in downtown Brunswick, roughly a ten-minute walk from the office.

41. Phillips had the other employees walk. He drove Ms. Corbett, alone, in his personal vehicle.

42. During the drive, Phillips insisted on holding Ms. Corbett's hand.

43. At the restaurant, Phillips ordered margaritas and drank alcohol in the middle of the workday.

44. When Ms. Corbett walked to the restroom, Phillips took hold of her hand again and physically spun her around as if they were dancing.

45. Ms. Corbett did not invite or welcome any of this physical contact. It made her uncomfortable, and she did not reciprocate.

46. After drinking at lunch in front of Ms. Corbett and her coworkers, Phillips again drove Ms. Corbett, alone, back to the office, and insisted on holding her hand for the entire drive.

**C. January 8, 2026: Phillips Tells the Staff "There's No HR Here."**

47. On January 8, 2026, Phillips conducted a firm-wide staff meeting by video conference, participating from the Firm's Newnan office.

48. Phillips was visibly intoxicated during the meeting and sipped from a drink on camera.

49. During the meeting, Phillips stated to the staff that "there's no HR here," to the laughter of those present.

50. During the same meeting, Phillips berated a female coworker, Gloria Vistan, in front of the entire staff, causing her visible distress.

51. Phillips's statement communicated to every Firm employee, including Ms. Corbett, that the Firm had no mechanism for reporting misconduct and that Phillips answered to no one.

52. The meeting was conducted over Zoom and, upon information and belief, was recorded.

**D. January 13, 2026: Phillips Sexually Assaults Ms. Corbett in the Office.**

53. On January 13, 2026, Phillips returned to the Brunswick office from a long lunch. He was severely intoxicated and slurring his words.

54. Phillips insisted that Ms. Corbett and a female coworker, Rebecca ("Becca") Myers, who had also just started at the Firm, hold his hands while he walked them across the street to a vacant building that he had recently purchased.

55. Inside the building, Phillips put his arm around Ms. Corbett's waist and stomach, grazing the underside of her breast.

56. Phillips then pressed his body against Ms. Corbett so that she could feel his penis against her leg.

57. Phillips rested his head on Ms. Corbett's right breast and said, "Good girls, my favorite girls, they get offices."

58. Through that statement, Phillips, who controlled office assignments at the Firm, tied workplace benefits to the women's acceptance of his sexual conduct.

59. On the walk back to the office, Phillips made explicit sexual jokes about the size of his penis.

60. Back in the office, Phillips grabbed Ms. Corbett again, touched her breast a second time, pressed his body against hers, and said, "You and me are gonna get in trouble!"

61. Phillips then stood in front of Becca with his legs spread and his crotch directed at her and shouted, "I think Becca's ready for a blow job! I know I am!"

62. Phillips raised his leg over Becca while she sat in her chair, simulated a sexual act toward her, and fell on top of her.

63. Horrified, Ms. Corbett turned to a male coworker, Kenny Arroliga, and said, “I can’t handle that happening to me, you can’t let him do that kind of stuff over her. Please.” Kenny nodded and replied, “I got you girl.”

64. Phillips then directed the same simulated sexual act at Ms. Corbett. Kenny repeatedly redirected Phillips toward his office.

65. Phillips returned to Ms. Corbett’s desk and attempted to crawl underneath it.

66. Phillips spat on Ms. Corbett’s hair. Kenny saw it and told Phillips to stop.

67. Phillips came to Ms. Corbett’s desk a third time. He placed his hand on the back of her chair, turned the chair toward himself, and pressed and rubbed his penis against her arm while swaying back and forth.

68. Kenny stood up, came to Ms. Corbett’s desk, and physically took Phillips by the arm to guide him back to his office.

69. Throughout the afternoon, Kenny physically positioned himself between Ms. Corbett and Phillips on multiple occasions to protect her.

70. Phillips later came out of his office, lay on his back on the office floor, and thrust his hips upward while moving across the floor as music blared.

71. At approximately 3:30 p.m., Phillips left the office and drove away in his vehicle while intoxicated.

72. Ms. Corbett never consented to any of Phillips's physical contact. All of it was unwelcome, offensive, and sexual in nature.

73. Throughout the afternoon, Ms. Corbett feared that Phillips would touch her again, and he did. She did not know how far he would go.

74. Becca and Kenny were present for and witnessed Phillips's conduct on January 13, 2026.

75. Phillips has since admitted that on January 13, 2026, he "did dance in the office."

**E. Ms. Corbett Is Forced to Resign.**

76. Ms. Corbett recorded the events of January 13, 2026 in a private journal that same day. That evening, she told her husband what had happened.

77. On the morning of January 14, 2026, Ms. Corbett texted Kenny: "Hi Kenny, I'm so sorry, but after the events of yesterday with Johnny's behavior, I just can't work their. I am so uncomfortable and upset." She told him that "what took place was so over the line and inappropriate" and that she was "looking at legal steps and criminal steps now."

78. Ms. Corbett also texted Becca that "yesterday's events were so inappropriate and over the line" and that she was "speaking to an attorney and filing

a police report."

79. Ms. Corbett resigned effective January 14, 2026.

80. Ms. Corbett had no reasonable alternative to resignation. Her harasser owned the Firm and controlled every aspect of her employment. No one at the Firm had authority to stop him. Phillips had announced that there was "no HR here." Firm employees, including the individual the Firm now identifies as part of its "office management," had watched the assaults happen in real time, and the Firm took no action to protect her.

81. Any reasonable person in Ms. Corbett's position would have felt compelled to resign.

82. Ms. Corbett reported Phillips's conduct to the Brunswick Police Department on or about **January 14, 2026** (Case No. 26-BP-01249). Phillips has acknowledged that Firm staff were interviewed by law enforcement after Ms. Corbett's resignation.

**F. Phillips's History of Sexual Misconduct Toward Women at the Firm.**

83. Ms. Corbett was not the first woman Phillips harassed at the Firm.

84. Upon information and belief, Phillips subjected other female employees of the Firm to unwelcome sexual comments and unwelcome physical contact, including Ms. Myers.

85. Phillips also directed abusive treatment at female employees in front of

the staff, including screaming at and berating Ms. Vistan.

86. Upon information and belief, before January 13, 2026, Firm employees complained about Phillips's sexual conduct toward women in the workplace, including.

87. Upon information and belief, Phillips regularly drank alcohol during the workday and returned to the office intoxicated, and the Firm's office management knew it.

88. On January 13, 2026 alone, Phillips directed his sexual misconduct at two women in the office: Ms. Corbett and Becca.

89. Despite actual knowledge of Phillips's propensity to drink during the workday and to sexually harass and touch female employees, the Firm took no action to supervise, restrict, or discipline Phillips, and it continued to give him unrestricted authority over, and access to, its female employees.

**G. The Firm's Response to Ms. Corbett's Charge.**

90. In response to Ms. Corbett's EEOC Charge, Phillips personally signed and submitted the Firm's position statement.

91. The Firm told the EEOC that it "maintains active office management," identifying Melissa Thompson, Samuel Smallwood, and Kenny Arroliga, and that its policies are contained in a "Policies and Procedures Manual."

92. None of the individuals the Firm identified had authority to supervise,

discipline, or remove Phillips. Each of them worked for him.

93. The Firm's position statement is contradicted by Phillips's own announcement to the staff, days earlier, that "there's no HR here."

94. After Ms. Corbett resigned, no one from the Firm contacted her about what happened. The Firm did not investigate her allegations, discipline Phillips, or take any corrective action.

95. Ms. Myers also left the Firm shortly after January 13, 2026.

**H. Ms. Corbett's Injuries.**

96. Ms. Corbett's distress was immediate and profound. She wrote in her journal: "I felt so stupid for being in that situation and not standing up for myself. . . . I feel like I'm in disbelief. Like, did this really happen? In front of people? Like, this is an attorney! A professional with his own practice!"

97. As a direct and proximate result of Defendants' conduct, Ms. Corbett has suffered and continues to suffer emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

98. As a direct and proximate result of her constructive discharge, Ms. Corbett lost wages from January 14, 2026 until she found new employment on February 5, 2026.

99. Ms. Corbett seeks damages for lost wages and benefits, emotional distress, medical expenses related to her emotional distress, and punitive damages

for the egregious nature of Defendants' conduct.

## CLAIMS FOR RELIEF

### COUNT I
### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (Defendant Law Office of Johnny Phillips, P.C.)

100. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

101. Plaintiff is a female and a member of a protected class.

102. Plaintiff was subjected to unwelcome sexual harassment, including unwelcome sexual advances, sexual touching of her breast and body, the pressing of Phillips's genitals against her body, simulated sexual acts, and explicit sexual comments.

103. The harassment was based on Plaintiff's sex. Phillips directed his sexual conduct at women in the workplace, and he called Plaintiff and her female coworker "good girls" and "my favorite girls" while touching them.

104. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment. The physical sexual assaults Phillips committed on January 13, 2026 were severe enough, standing alone, to alter the conditions of Plaintiff's employment.

105. The harassment was committed by Phillips, the Firm's owner, Chief Executive Officer, and highest authority, who was Plaintiff's supervisor and the

Firm's proxy and alter ego. The Firm is therefore directly and strictly liable for the harassment, and no affirmative defense is available to it.

106. The harassment culminated in Plaintiff's constructive discharge, a tangible employment action.

107. The Firm also had actual knowledge of the harassment as it occurred, through its owner and through the employees it identifies as its office management, and it failed to take prompt and effective remedial action.

108. The Firm acted with malice or with reckless indifference to Plaintiff's federally protected rights.

109. As a direct and proximate result of the Firm's unlawful conduct, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other harms, and she is entitled to back pay, front pay, compensatory damages, punitive damages under 42 U.S.C. § 1981a, and attorneys' fees and costs under 42 U.S.C. § 2000e-5(k).

**COUNT II**
**SEX DISCRIMINATION (CONSTRUCTIVE DISCHARGE)**
**IN VIOLATION OF TITLE VII**
**(Defendant Law Office of Johnny Phillips, P.C.)**

110. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

111. Title VII prohibits employers from discriminating against any individual with respect to the terms, conditions, or privileges of employment because

of that individual's sex. 42 U.S.C. § 2000e-2(a)(1).

112. Through its owner, the Firm subjected Plaintiff to working conditions that were so intolerable that a reasonable person in her position would have felt compelled to resign.

113. Plaintiff was subjected to those conditions because of her sex.

114. Plaintiff resigned because of those conditions and was thereby constructively discharged.

115. Plaintiff had no meaningful opportunity to seek a remedy short of resignation because the harasser was the owner and highest authority of the Firm, the Firm had no human resources department or functioning complaint procedure, and Phillips had told the staff that "there's no HR here."

116. The Firm acted with malice or with reckless indifference to Plaintiff's federally protected rights.

117. As a direct and proximate result of the Firm's intentional sex discrimination, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other harms, and she is entitled to back pay, front pay, compensatory damages, punitive damages under 42 U.S.C. § 1981a, and attorneys' fees and costs under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**ASSAULT**
**(Defendant John Gary Phillips Jr.)**

118. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

119. Phillips, as set forth above, intentionally engaged in conduct that caused Plaintiff to reasonably apprehend imminent harmful and offensive physical contact, including repeatedly approaching and grabbing her, directing a simulated sexual act at her, attempting to crawl under her desk, and turning her chair toward him before pressing his genitals against her.

120. As a direct and proximate result of Phillips's intentional acts, Plaintiff experienced a reasonable apprehension of immediately receiving violent, offensive, and sexual physical contact, and she did in fact fear for her safety and personal security.

121. As a direct and proximate result of the assault committed by Phillips, Plaintiff suffered emotional injury, and she has suffered and continues to suffer damages.

**COUNT IV**
**BATTERY**
**(O.C.G.A. § 51-1-13)**
**(Defendant John Gary Phillips Jr.)**

122. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

123. Phillips, as set forth above, intentionally and without Plaintiff's consent

made physical contact with Plaintiff, including by: grabbing her hand and spinning her; putting his arm around her waist and stomach; touching her breast on two occasions; resting his head on her breast; pressing his penis against her leg; pressing and rubbing his penis against her arm; and spitting on her hair.

124. Each of these contacts was offensive and unwelcome, was committed with the intent to make contact, and caused harmful or offensive bodily contact to Plaintiff.

125. Phillips's intentional contact with Plaintiff's breast, without her consent, also constitutes sexual battery under O.C.G.A. § 16-6-22.1.

126. As a direct and proximate result of the battery committed by Phillips, Plaintiff suffered physical and emotional injury, and she has suffered and continues to suffer damages.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Defendant John Gary Phillips Jr. and**
**Defendant Law Office of Johnny Phillips, P.C.)**

127. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

128. Phillips's conduct toward Plaintiff, including the repeated sexual battery and sexual harassment of a new employee in the workplace in front of her coworkers, by the attorney who owned the business and controlled her livelihood, was extreme and outrageous and exceeded all bounds of decency tolerated in a

civilized community.

129. Phillips's position of authority over Plaintiff, and his knowledge that she had no one to whom she could complain, heightened the outrageousness of his conduct.

130. Phillips intended to inflict emotional distress or acted in reckless disregard of the high probability that his conduct would do so.

131. Phillips committed this conduct while acting as the owner, Chief Executive Officer, and alter ego of the Firm, during working hours and in the Firm's office. The Firm is liable for his conduct.

132. Defendants' conduct caused Plaintiff severe emotional distress that she continues to suffer and is likely to suffer in the future.

133. Defendants are liable for the general and special damages proximately resulting from their intentional infliction of emotional distress.

**COUNT VI**
**NEGLIGENT SUPERVISION AND RETENTION**
**(O.C.G.A. § 34-7-20)**
**(Defendant Law Office of Johnny Phillips, P.C.)**

134. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

135. This Count is pleaded in the alternative to the extent Phillips's conduct is found not to be the conduct of the Firm itself.

136. The Firm owed Plaintiff a duty to exercise ordinary care in the

supervision and retention of its personnel, and not to retain personnel after it knew or should have known of their propensity to engage in the type of conduct that caused Plaintiff's injuries.

137. Before January 13, 2026, the Firm knew or reasonably should have known of Phillips's propensity to drink alcohol during the workday and to engage in sexual harassment and unwelcome physical contact with female employees, including through prior complaints and prior incidents involving other women at the Firm.

138. It was reasonably foreseeable to the Firm that Phillips would sexually harass and batter female employees, including Plaintiff.

139. The Firm breached its duty by retaining Phillips with unrestricted authority over and access to female employees, by failing to supervise or restrict him, and by failing to adopt or enforce any policy or procedure that could stop him.

140. As a direct and proximate result of the Firm's negligence, Plaintiff was sexually harassed, assaulted, and battered, and she suffered the damages described herein.

**COUNT VII**
**RATIFICATION**
**(Defendant Law Office of Johnny Phillips, P.C.)**

141. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

142. Phillips committed tortious acts against Plaintiff, including assault,

battery, and intentional infliction of emotional distress, while acting as the Firm's owner and Chief Executive Officer, during working hours, and on the Firm's premises.

143. Because Phillips is the Firm's owner and alter ego, his knowledge of his own conduct is the knowledge of the Firm.

144. The Firm also acquired knowledge of Phillips's conduct through the employees who witnessed it, including the individual the Firm identifies as part of its office management, and through Plaintiff's written statements to her coworkers on January 14, 2026, her EEOC Charge, and the law enforcement investigation that followed.

145. After acquiring full knowledge of Phillips's conduct, the Firm failed to repudiate it, failed to investigate or discipline Phillips, retained him with full authority, and instead denied the conduct and defended it before the EEOC.

146. By these acts and omissions, the Firm ratified Phillips's tortious conduct and is liable for all damages that the jury may determine appropriate to compensate Plaintiff for the harm done.

**COUNT VIII**
**PUNITIVE DAMAGES**
**(O.C.G.A. § 51-12-5.1)**
**(Defendant John Gary Phillips Jr. and**
**Defendant Law Office of Johnny Phillips, P.C.)**

147. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

148. Defendants' actions as described herein show willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

149. Phillips acted with the specific intent to cause harm.

150. Phillips also acted while under the influence of alcohol to the degree that his judgment was substantially impaired. Under O.C.G.A. § 51-12-5.1(f), there is no limitation on the amount of punitive damages that may be awarded against him.

151. The Firm's ratification of, and acquiescence in, Phillips's conduct further evinces a conscious disregard for the rights of Plaintiff and other female employees.

152. Plaintiff is accordingly entitled to recover from Defendants, in addition to compensatory damages, an award of punitive damages under Georgia law to punish Defendants and to deter them from repeating such wrongful acts in the future.

**COUNT IX**
**EXPENSES OF LITIGATION AND ATTORNEYS' FEES**
**(O.C.G.A. § 13-6-11)**
**(Defendant John Gary Phillips Jr. and**
**Defendant Law Office of Johnny Phillips, P.C.)**

153. Plaintiff re-alleges the preceding paragraphs as if fully set forth herein.

154. Defendants acted in bad faith in the underlying transactions giving rise to Plaintiff's state law claims, and they have been stubbornly litigious and caused Plaintiff unnecessary trouble and expense.

155. Plaintiff is entitled to recover her expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff demands judgment as follows:

(a) That this Court declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiff as secured by state and federal law;

(b) Temporarily, preliminarily, and permanently enjoin Defendant Law Office of Johnny Phillips, P.C. from future discriminatory acts based on sex;

(c) Back pay and front pay, together with lost benefits and other lost compensation;

(d) Compensatory damages and general damages for mental and emotional suffering caused by Defendants' misconduct;

(e) Special damages for emotional distress and related medical expenses;

(f) Punitive damages against the Firm under 42 U.S.C. § 1981a;

(g) Punitive damages against Defendants under O.C.G.A. § 51-12-5.1, without limitation as to Defendant Phillips;

(h) Reasonable attorneys' fees, costs, and expenses of litigation under 42 U.S.C. § 2000e-5(k) and O.C.G.A. § 13-6-11;

(i) Trial by jury as to all issues;

(j) Prejudgment and post-judgment interest at the rate allowed by law; and

(k) All other relief to which she may be entitled.

Respectfully submitted, this 23rd day of November, 2026.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Christopher B. Hall
Georgia Bar No. 318380
Gordon Van Remmen
Georgia Bar No. 215512
300 Galleria Pkwy, Suite 300
Atlanta, GA 30339
T: (404) 876-8100
chall@hallandlampros.com
gordon@hallandlampros.com

Attorneys for Plaintiff